UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,<br><br>Plaintiff,<br><br>v.<br><br>JETBLUE AIRWAYS CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. _____ |

**COMPLAINT TO COMPEL ARBITRATION UNDER THE RAILWAY LABOR ACT**

Plaintiff Air Line Pilots Association, International ("Plaintiff," "ALPA," or the "Association"), for its Complaint against JetBlue Airways Corporation ("Defendant," "JetBlue," or the "Company"), alleges as follows:

**SUMMARY OF ACTION**

1. Plaintiff seeks an order under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 *et seq.*, to compel Defendant JetBlue to arbitrate "minor disputes" under the RLA regarding the interpretation and application of the collective bargaining agreements applicable to the pilots employed by JetBlue. Defendant has refused to comply with mandatory arbitration procedures for resolving minor disputes as required by the RLA, necessitating this action.

2. Under the RLA, disputes regarding "the interpretation or application of agreements concerning rates of pay, rules or working conditions," such as this one, are known as minor disputes. 45 U.S.C. § 184; *Elgin, Joliet & E. Ry. v. Burley*, 325 U.S. 711, 722-23 (1945). The RLA provides that all such interpretive minor disputes are subject to "compulsory and binding arbitration" before the appropriate board of adjustment. *Consolidated Rail Corp. v. Ry. Labor*

*Exec.'s Ass'n*, 491 U.S. 299, 303 (1989); *Andrews v. Louisville & Nashville R.R.*, 406 U.S. 320, 323-24 (1972); *Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R.*, 373 U.S. 33 (1963).

3. Plaintiff and Defendant have a dispute regarding the interpretation and application of the pilot job protection provisions of their collective bargaining agreement ("CBA") to JetBlue's commercial arrangement with United Airlines, Inc. ("United"). ALPA contends that the United/JetBlue arrangement and Defendant's conduct pursuant thereto violate contractual provisions defining the scope of work that must be performed by JetBlue pilots. Such "scope" clauses, by definition, establish terms that address external arrangements between the employer carrier and other airlines so as to protect the pilot group's flying from being performed by others to the detriment of the pilot group's jobs and careers. Defendant disagrees and contends that the scope provisions of the JetBlue CBA are not applicable to the United/JetBlue arrangement and that its conduct pursuant thereto does not violate the JetBlue CBA.

4. In accordance with the mandate of the RLA, JetBlue and ALPA have established in their CBA an arbitration system board of adjustment to resolve grievances regarding the interpretation and application of the JetBlue CBA (the "JetBlue System Board"). ALPA has filed a grievance for arbitration before the JetBlue System Board, alleging that Defendant's conduct in connection with its arrangement with United violates the CBA. The ALPA grievance concerns the interpretation and application of the JetBlue CBA, and therefore, is a minor dispute, which must be arbitrated by Plaintiff and Defendant before the JetBlue System Board as required by the RLA.

5. Defendant has refused to arbitrate the entirety of ALPA's grievance, including all associated contractual claims, arguments, and evidentiary matters, before the JetBlue System Board, despite its duty to do so under the RLA. Consequently, ALPA now seeks an order compelling Defendant to arbitrate the ALPA grievance before the JetBlue System Board. *See Bhd.*

*of Locomotive Eng'rs*, 373 U.S. at 36-38; *Andrews v. Louisville & Nashville R.R.*, 406 U.S. at 323-24.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over the present action pursuant to 28 U.S.C. §§ 1331 and 1337, because this case arises under the RLA, 45 U.S.C. §§ 151 *et seq.*, a federal statute regulating interstate commerce.

7. Venue is proper within the Eastern District of New York pursuant to 28 U.S.C. § 1391(b), because subject-matter jurisdiction is not founded on diversity of citizenship and this District is a district where a substantial part of the events giving rise to Plaintiff's claims occurred and where the Defendant in this action may be found.

## THE PARTIES

8. Defendant JetBlue is a commercial air carrier with national and international operations. JetBlue is headquartered in Long Island City, New York, which is within the Eastern District of New York. JetBlue is a "common carrier by air" and, as such, it is a "carrier" within the meaning of Section 201 of the RLA, 45 U.S.C. § 181.

9. Plaintiff ALPA is an unincorporated labor organization headquartered in McLean, Virginia and the certified collective bargaining representative of the JetBlue pilots under the RLA. Plaintiff's JetBlue Master Executive Council, the coordinating body for ALPA's representation of JetBlue pilots, has an office in Rockville Centre, New York, which is within the Eastern District of New York.

10. JetBlue and ALPA are parties to a collective bargaining agreement governing the rates of pay, rules, and working conditions of the JetBlue pilots. The JetBlue CBA became effective on August 1, 2018, and became amendable on February 1, 2025.

***The Obligation to Arbitrate Minor Disputes Before Boards of Adjustment Under The RLA***

11. Section 2 First of the RLA, 45 U.S.C. § 152 First, states that "[i]t shall be the duty of all carriers, their officers, agents and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce." In furtherance of the duty to "settle all disputes," Section 204 of the RLA, 45 U.S.C. § 184, requires that "disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions," known as minor disputes, which have not been resolved by grievance procedures antecedent to arbitration, "may be referred by petition of the parties or by either party to an appropriate adjustment board." *Elgin, Joliet & E. Ry.*, 325 U.S. at 722-23; *Bhd. of Locomotive Eng'rs*, 373 U.S. at 36-38; *Andrews*, 406 U.S. at 323-24.

12. Section 204 further provides that "[i]t shall be the duty of every carrier and of its employees, acting through their representatives, selected in accordance with the provisions of this subchapter, to establish a board of adjustment." 45 U.S.C. § 184.

13. Consistent with the mandates of the RLA, in Section 21 of the JetBlue CBA, Plaintiff and Defendant established the JetBlue System Board. Section 21.B of the JetBlue CBA provides that the JetBlue System Board "shall have jurisdiction over disputes between any Pilot or group of Pilots and the Company growing out of grievances or out of interpretation or application of any of the terms of this Agreement." (A copy of Section 21 of the JetBlue CBA is attached hereto as Exhibit A.) The parties further agreed that disputes over the terms in Section 1 of the JetBlue CBA are subject to expedited arbitration. Section 1.I states that "any and all" unresolved disputes over

an alleged violation of Section 1 "shall be resolved by final and binding arbitration" on an expedited schedule and further imposes an obligation on the airline to produce to ALPA "documents relevant to the issue being arbitrated." (A copy of Section 1 of the JetBlue CBA is attached hereto as Exhibit B.)

***Defendant's Refusal to Arbitrate the Entirety of ALPA's Grievance***

14. On May 28, 2025, JetBlue and United Airlines, Inc. ("United") entered into the so-called "Blue Sky collaboration" and various related agreements, providing for arrangements including but not limited to interlining, joint distribution/cross-selling, frequent flyer program participation, customer service initiatives (e.g., seat assignments and check-in), ancillary sales, and slot access (collectively the "United/JetBlue Agreements").

15. Section 1.B.1 of the JetBlue CBA provides that "Except as otherwise provided in this Agreement, all flying conducted by or on behalf of the Company … shall be performed by Pilots represented by the Association on the JetBlue Airways System Seniority List." (*See* Ex. B at 1-1.)

16. Section 1.F of the JetBlue CBA establishes conditions and restrictions applicable to JetBlue's entry, renewal, amendment, and maintenance of "Commercial Agreement[s]", as well as additional restrictions specific to "Joint Venture Agreements" and Commercial Agreements with "Domestic Carriers." (*See* Ex. B at 1-4 to 1-7.) These and other relevant terms are defined in Section 2 of the CBA. (A copy of Section 2 of the JetBlue CBA is attached hereto as Exhibit C.)

17. On August 29, 2025, to resolve the dispute over interpretation and application of JetBlue CBA Section 1 to the arrangements provided for in the United/JetBlue Agreements, ALPA filed ALPA Case No. JBU 2025-83-MEC, a grievance under the JetBlue CBA (the "ALPA Grievance").

18. In the ALPA Grievance, the Association submitted the following issues to the

JetBlue System Board:

A. Whether the Company violates CBA Section 1.B.1, and any and all related sections, when flying conducted on behalf of the Company is performed by United Airlines, Inc. ("United"), using pilots not on the JetBlue Airways System Seniority List, pursuant to the [Blue Sky collaboration] between United and JetBlue … and related agreements, including but not limited to the [bilateral interline agreement] ("Bilateral Interline Agreement") (collectively, the "United/JetBlue Agreements")?

B. Whether the Company violated CBA Section 1.F and any and all related sections, by entering into the United/JetBlue Agreements?

C. Whether flying under the United/JetBlue Agreements violates CBA Section 1.F and any and all related sections?

D. Whether the Company violated CBA Sections 1.B.1, 1.F, and any and all related sections, by entering into the Bilateral Interline Agreement?

E. If so, what shall the remedy be?

19. ALPA's statement of facts in the ALPA Grievance included allegations regarding various arrangements that are part of Defendant's Blue Sky collaboration with United, including but not limited to interlining, joint distribution/cross-selling, frequent flyer program participation, customer service initiatives (e.g., seat assignments and check-in), ancillary sales, and slot access.

20. In the ALPA Grievance, the Association requested expedited arbitration pursuant to Section 1.I of the JetBlue CBA.

21. On or about September 5, 2025, JetBlue contacted ALPA to initiate the CBA-prescribed process of selecting an arbitrator to serve as "Neutral Chair" for the JetBlue System Board that would hear the ALPA Grievance. Throughout September and early October 2025, the parties had a series of calls and correspondence to select an arbitrator and schedule hearing dates. At no time during any of these interactions did Defendant raise any claim that the JetBlue System Board lacked jurisdiction over the ALPA Grievance.

22. On or about October 9, 2025, the parties agreed to schedule the ALPA Grievance

for hearing before the JetBlue System Board, chaired by Arbitrator Joyce Klein, on March 31, April 1, and April 7-10, 2026, and reserved those dates with Arbitrator Klein. JetBlue made no objection to the jurisdiction of the System Board at that time. The parties agreed to convene the JetBlue System Board hearing on the ALPA Grievance in New York, New York.

23. On February 27, 2026, in response to ALPA's request for documents relevant to the issues being arbitrated, Defendant asserted for the first time that the JetBlue System Board does not have jurisdiction to consider certain allegations and claims raised by the ALPA Grievance. Specifically, JetBlue stated, in relevant part:

> JetBlue does not agree that the System Board has jurisdiction to resolve challenges to arrangements between JetBlue and other airlines that are not "Commercial Agreements," which the JetBlue-ALPA collective bargaining agreement ("CBA") defines narrowly as Codeshare Agreements and/or Joint Venture Agreements. The CBA does not address other types of arrangements such as those relating to frequent flyer program participation, slot [access], [or] ancillary sales…. The CBA does not permit ALPA to challenge such arrangements and does not vest the System Board with jurisdiction over disputes relating thereto. Should ALPA disagree on this point, … [t]he CBA does not so provide, and JetBlue does not consent to have any questions of substantive arbitrability raised by ALPA's grievance resolved by the System Board. Please advise regarding ALPA's position on this issue.

24. On March 6, 2026, ALPA responded to and rejected the Company's newly-asserted arbitrability objections. Specifically, ALPA stated, in relevant part:

> The Association disagrees with any contention that this grievance somehow raises threshold issues of arbitral jurisdiction. This grievance, and the associated information requests, could not more clearly present questions of contract interpretation and application—including but not limited to: whether flying performed by United under the Blue Sky [collaboration] constitutes "flying by or on behalf of the Company" within the meaning of CBA Section 1.B.1.; whether Blue Sky meets the Contractual definition of "Commercial Agreement", "Joint Venture," or "Industry Standard Interline Agreement'; and whether the requested documents are "relevant to the issue being arbitrated" and thus required to be produced under CBA Section 1.I.1. As you well know, such matters are classic minor disputes under the Railway Labor Act subject to the "mandatory, exclusive, and comprehensive" jurisdiction of the System Board of Adjustment…. Moreover, the Association notes that the Company has known the allegations and claims asserted in this grievance since it was filed in August 2025, and never before raised any question of … arbitrability. To do so for the first time now, in the context of a

discovery response, weeks before the hearing, is wholly without merit and appears mere pretext for delay or avoidance of having the legitimate arbitral issues addressed.

25.  On March 11, 2026, the Company responded to ALPA's correspondence as follows:

> To be clear, JetBlue does not consent to the System Board's jurisdiction to hear any challenge ALPA may choose to make to the aspects of the [Blue Sky collaboration] relating to frequent flyer program participation, slot [access], [or] ancillary sales…. Nor does JetBlue consent to having the System Board determine the question of substantive arbitrability.

26.  On March 12, 2026, ALPA responded to JetBlue, requesting clarification of the Company's position on the arbitrability of the ALPA Grievance. ALPA stated, in relevant part:

> As previously stated in ALPA's letter dated March 6, 2026, the Railway Labor Act and the CBA vest the System Board of Adjustment with exclusive and binding jurisdiction to decide all claims set forth in ALPA Grievance No. JBU 2025-83-MEC, without limitation. As such, the Association maintains that this matter can and must proceed, in its entirety, to arbitration before that body as scheduled to begin on March 31, 2026. Unless JetBlue affirmatively agrees either that it will submit ALPA Grievance No. 2025-83-MEC for System Board decision, or that it will submit the matter of arbitrability to the System Board, the Association will understand the Company to have refused to arbitrate this matter and will consider all appropriate legal and equitable remedies.

Noting the imminence of the scheduling hearing dates, the letter requested that JetBlue respond "as soon as possible but no later than close of business March 13, 2026."

27.  On March 16, 2026, the Company responded to ALPA and reaffirmed its position that the JetBlue System Board lacks jurisdiction to resolve the ALPA Grievance claims insofar as they involve "challenges to arrangements … such as frequent flyer program participation, slot [access], [and] ancillary sales…." The Company also reaffirmed its position that the CBA does not confer on the JetBlue System Board jurisdiction to decide questions of substantive arbitrability and that JetBlue "does not consent" to having that body resolve the arbitrability of the ALPA Grievance. Although the Company's letter asserted that "JetBlue remains ready and willing to

arbitrate whether the [Blue Sky collaboration] is a 'Commercial Agreement' as the parties have defined that term in the CBA," it further stated that "[i]ts willingness to do so is without prejudice to JetBlue's position on the System Board's lack of jurisdiction as set forth above, or its right to raise the issue of arbitrability [in court] following the conclusion of the hearing…."

28.      Arbitrating the ALPA Grievance subject to improper restrictions regarding the subject matter of the contractual claims, arguments, and evidence that the JetBlue System Board can consider—including but not limited to contract claims involving consideration of and/or application of the JetBlue CBA to the United/JetBlue Agreements' joint distribution/cross-selling, frequent flyer, ancillary sales, customer service, slot access, and other arrangements (individually or in combination with other aspects of the cooperation)—violates JetBlue's dispute resolution obligations under RLA Sections 2 First and 204, infringes on the jurisdiction of the JetBlue System Board, and improperly prejudices ALPA's rights to have that arbitral body resolve the entirety of the dispute set forth in the ALPA Grievance. Furthermore, proceeding to arbitration under Defendant's threat of a substantive arbitrability challenge would improperly prejudice ALPA's RLA right to have the JetBlue System Board's determination treated as final and binding.

29.      Based on the foregoing, and on information and belief, Defendant has refused and is refusing to submit to final and binding arbitration the entirety of the ALPA Grievance, including all associated contractual claims, arguments, and evidentiary matters, before the JetBlue System Board, in contravention of the requirements of the RLA.

30.      ALPA has fully complied with all obligations under the CBA and the RLA, and has exhausted all administrative and contractual remedies. ALPA has no adequate remedy at law.

## PLAINTIFF'S CLAIM FOR RELIEF

31.      Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-30, inclusive.

9

32. This action is governed by the RLA, 45 U.S.C. §§ 151 *et seq*.

33. ALPA and Defendant have a disagreement over whether and how Sections 1.B.1, 1.F, and related provisions of the JetBlue CBA are applicable to the United/JetBlue Agreements and the flying performed thereunder. These disagreements regarding the interpretation and application of the JetBlue CBA are minor disputes under the RLA and, as such, must be resolved through final and binding arbitration before the JetBlue System Board.

34. While Defendant may advocate for its own interpretation of Sections 1.B.1, 1.F, and related provisions of the JetBlue CBA, as well as its preferred application of such provisions to the present circumstances, Defendant may not refuse to arbitrate these minor disputes before the JetBlue Pilots' System Board. By so doing, Defendant has violated, continues to violate, and, upon information and belief, intends to further violate, its duty under the RLA to resolve minor disputes through final and binding arbitration before a board of adjustment. *See* 45 U.S.C. §§ 152 First, 184.

35. The federal courts have the authority under the RLA to compel arbitration of disputes regarding the interpretation or application of collective bargaining agreements—i.e., minor disputes—like the present dispute between Plaintiff and Defendant. *W. Airlines v. Int'l Bhd. of Teamsters,* 480 U.S. 1301, 1302 (1987) (a court may compel arbitration of a minor dispute before a system board even though the court lacks authority to interpret the terms of a collective bargaining agreement). An order compelling Defendant to arbitrate promptly the entirety of the ALPA Grievance, including all associated contractual claims, arguments, and evidentiary matters, is necessary to preserve the integrity of the RLA's dispute-resolution procedures and the jurisdiction of the JetBlue System Board.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order:

(a)     Compelling Defendant to engage in final and binding expedited arbitration before the JetBlue System Board to resolve the entirety of the ALPA Grievance, including all associated contractual claims, arguments, and evidentiary matters, pursuant to Sections 1.I and 21 of the JetBlue CBA, and the mandate of the RLA; and

(b)     Granting Plaintiff such other relief as the Court may deem just and proper.

Dated: March 19, 2026

Respectfully submitted,

Thomas N. Ciantra

Marcus C. Migliore (MM4453)*
Thomas N. Ciantra (TC0450)
AIR LINE PILOTS ASSOCIATION,
  INTERNATIONAL
Legal Department
7950 Jones Branch Drive, Suite 400S
McLean, VA 22102-
(703) 481-2468
(703) 481-2478 fax
*Marcus.Migliore@alpa.org*
*Thomas.Ciantra@alpa.org*

Kate M. Swearengen (KS1945)
COHEN, WEISS AND SIMON LLP
909 Third Avenue, 12th Floor
New York, NY 10022
(212) 563-4100
*kswearengen@cwsny.com*

*Attorneys for Plaintiff*
*Air Line Pilots Association, International*

*Marcus C. Migliore is admitted to practice in the U.S. District Court for the Southern District of New York and is in the process of applying for reciprocal admission in the U.S. District Court for the Eastern District of New York